**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
─────────────────────────────────

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        **v.**                **04-CR-305A**

**MICHAEL J. CULLIGAN,**

        **Defendant.**
─────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,
in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report
upon dispositive motions.

## PRELIMINARY STATEMENT

        The defendant, Michael J. Culligan ("the defendant"), was originally
indicted in a single count indictment charging him with having violated Title 18 U.S.C.
§§ 1344(a) and 2 on November 16, 2004.  (Docket #1).  The defendant filed an
omnibus motion wherein he sought: (1) dismissal of this indictment because it failed to
"allege materiality, an essential element of the offense" charged; (2) dismissal of this
indictment because it failed "to contain an essential fact (the identity of all of the victim
banks and the other alleged misrepresentations);" (3) dismissal of this indictment on the
basis that "the sole count is duplicitous;" (4) dismissal of this indictment based on an
"unconstitutional pre-indictment delay;" (5) suppression of "documents obtained by local

police acting pursuant to a civil seizure order;" (6) "disclosure of the identities of all government informants;" (7) discovery pursuant to Rule 16 of the Fed. R. Crim. P.; (8) production of *Brady* material; (9) "disclosure of evidence pursuant to Rules 404(b), 608 and 609 of the Federal Rules of Evidence;" (10) disclosure "of witness statements;" (11) "preservation of rough notes and other evidence;" (12) permission allowing counsel to actively participate in *voir dire*; (13) "pre-trial production of government summaries;" (14) permission to conduct "*voir dire* [of] government experts outside the presence of the jury;" (15) an audibility hearing; and (16) permission "to make other motions." (Docket #20).

The government filed its response in opposition to the defendant's requests on March 30, 2006 (Docket #22), and oral argument was heard by this Court on March 31, 2006 and decision was reserved at that time.  (Docket #23).

Thereafter, a Superseding Indictment was returned against the defendant wherein he was charged with multiple counts of having violated Title 18 U.S.C. §§ 1344(1) and 2.  (Docket #25).

The defendant filed an omnibus motion on July 14, 2006 wherein he incorporated by reference his prior motions filed on March 15, 2006.  (Docket #29).  He also included additional motions wherein he seeks: (1) "dismiss[al] of the superseding indictment for violation of the due process clause, and under Fed. R. Crim. P. 48(b);" (2) a review by the Court of "all grand jury transcripts to determine if the superseding

indictment was issued by an independent and unbiased grand jury, and if it was not,

motion to dismiss for violation of the Fifth Amendment;" (3) dismissal of "Count 4 for

failing to state an offense;" and (4) dismissal of "Count 5 for failing to state an offense."

(Docket #29).

The government filed a response in opposition to defendant's motions on

August 7, 2006 (Docket #31), and oral argument was heard by this Court.  The

defendant's motions relating to non-dispositive issues will be decided by this Court in a

separate decision and order.  Those motions of a dispositive nature will be separately

addressed herein.

## DISCUSSION AND ANALYSIS

### 1.    Defendant's Motion To Dismiss Counts One
### Through Four Of The Superseding Indictment:

The defendant argues that Counts One through Four of the Superseding

Indictment should be dismissed because those counts "fail to allege materiality of

falsehood, an essential part of 'scheme or artifice to defraud' and an essential part of

the bank fraud offense charged."  (Docket #20, p. 3; Docket #29, p. 3 and Exhibit D

attached thereto).

Counts One through Four of the Superseding Indictment basically charge

the defendant with knowingly "participat[ing] in a scheme and artifice to defraud various

banks, including but not limited to Marine Midland, M&T Bank, and Sovereign Bank" in

violation of 18 U.S.C. § 1344(1).  (Docket #25).

Section 1344(1) of Title 18 of the United States Code states:

Whoever knowingly executes, or attempts to execute, a scheme or artifice -

(1)  to defraud a financial institution; . . . shall be fined no more than $1,000,000 or imprisoned not more than 30 years, or both.

The lack of an expressed allegation of "materiality" does not cause the indictment to be defective.  The use of the words "scheme or artifice to defraud" in the statute "incorporate materiality" since it "must [be] presume[d] that Congress intended to incorporate materiality."  As the United States Supreme Court has stated:

It is a well established rule of construction that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meanings of these terms."

*   *   *

Indeed, as the sources we are aware of demonstrate, the common law could not have conceived of "fraud" without proof of materiality.

*Neder v. United States*, 527 U.S. 1, 22-23 (1999) (citations omitted).

The government will be obligated to prove "materiality" as an element of the crime charged, but such requirement of proof does not cause the indictment to be defective.  Therefore, it is RECOMMENDED that defendant's motion to dismiss the

Superseding Indictment on this basis be DENIED.


      **2.**      **Defendant's Motion To Dismiss The Superseding
Indictment "Because It Fails To Contain An
Essential Fact (The Identity Of All The Victim
Banks And The Other Alleged Misrepresentations):"**

This motion was originally made attacking the sole count in the original

Indictment.  (Docket #20).  After the Superseding Indictment (Docket #25) was

returned, the defendant incorporated by reference his original motion (Docket #20) into

his present omnibus motion (Docket #29, p. 3).  Therefore, it will be addressed with

respect to each count set forth in the Superseding Indictment.


Count One in the Superseding Indictment sets forth eleven (11) numbered

paragraphs which describe the business of the defendant, the business practices of the

defendant and the alleged "scheme and artifice" employed by the defendant "to defraud

various banks including but not limited to Marine Midland, M&T Bank, and Sovereign

Bank."  (Docket #25).  The allegations of paragraphs 1 through 11 set forth in Count

One are incorporated by reference in Counts Two through Five of the Superseding

Indictment.


Counts One, Two and Three of the Superseding Indictment expressly

identify Marine Midland as the bank allegedly defrauded by the defendant.  Count Four

of the Superseding Indictment expressly identifies M&T Bank as the bank allegedly

defrauded, and Count Five of that Indictment expressly identifies Sovereign Bank as

the bank allegedly defrauded by the defendant.  Each count also sets forth a brief description of the fraudulent acts allegedly perpetrated by the defendant in defrauding the named bank.

In resolving questions concerning the sufficiency of an indictment or charging document, the United States Supreme Court has provided the following guidance:

> In a number of cases the Court has emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured.  These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'  Cochran and Sayre v. United States, 157 U.S. 286, 290; Rosen v. United States, 161 U.S. 29, 34."  Hagner v United States, 285 US 427, 431, 76 L ed 861, 865, 52 S Ct 417.  See Potter v United States, 155 US 438, 445, 39 L ed 214, 217, 15 S Ct 144; Bartell v United States, 227 US 427, 431, 57 L ed 583, 585, 33 S Ct 383; Berger v United States, 295 US 78, 82, 79 L ed 1314, 1318, 55 S Ct 629; United States v Debrow, 346 US 372, 377, 378, 98 L ed 92, 97, 74 S Ct 113.

*Russell v. United States*, 369 U.S. 749, 763-64 (1962).

Each of the aforesaid Counts contains a specific time period in which the alleged fraudulent act was perpetrated as well as a fairly detailed description of how the fraudulent act was allegedly carried out as to each named bank.  As a result, the

indictment on its face is valid since it does contain the identity of each victim bank in each of the counts alleged along with a specified time frame and description of the fraudulent acts allegedly perpetrated against each named bank.  Therefore, the defendant's claim in this regard is without legal merit, and it is RECOMMENDED that this motion be DENIED.


      **3.**      **Defendant's Motion To Dismiss The Indictment Because "The Sole Count Is Duplicitous:"**

This motion has become moot by reason of the return of the Superseding Indictment (Docket #25) which contains five separate, distinct allegations of violation of 18 U.S.C. § 1344(1) involving separately-named banks as victims who were allegedly defrauded by the defendant during specified time periods.  None of the five counts within the Superseding Indictment is "duplicitous" since each count merely alleges a "single scheme to defraud."  *See United States v. Margiotta*, 646 F.2d 729 (2d Cir. 1981), *cert. denied*, 460 U.S. 913 (1983).  Therefore, it is RECOMMENDED that defendant's motion be DENIED.


      **4.**      **Defendant's Motion To Dismiss The Indictment On The Basis Of "Unconstitutional Pre-Indictment Delay" And Under Fed. R. Crim. P. 48(b):**

The defendant argues that the "Superseding Indictment shockingly increases the pre-indictment delay in two substantial ways, by: (a) reaching back farther (sic) into the past (until 1997) than the Indictment did; and, (b) delaying the charging of the crimes alleged in counts 1-5 to farther (sic) into the future - a period of 17.5 months

after the return of the original Indictment and six years after the last criminal action was

alleged to have occurred.  The pre-indictment delay in this case was unconstitutional

even when the governing document was the November 2004 indictment."  (Docket #29,

p. 4, ¶ IV).  In further support of this position, the defendant argues that "there was no

rational, neutral or plausible reason for this shocking period of delay, and the only

possibility that remains is that the delay was either designed to and/or had the effect of

prejudicing [the defendant's] defense of this case."  (Docket #29, p. 5, ¶ IV).


      The Fifth Amendment to the United States Constitution expressly provides

in part:

> No person shall be held to answer for a capital, or otherwise
> infamous crime, unless on a presentment or indictment of a
> grand jury, . . . , nor be deprived of life, liberty, or property,
> without due process of law. . . . (emphasis added).

      The government argues that the defendant's motion to dismiss the

indictment based on his claim of denial of due process under the Fifth Amendment

must be denied because the defendant has failed to establish prejudice which is a

prerequisite for such relief as set forth in case law.  Since the indictment in this case

was returned within the allowable statute of limitations period for the charges therein,

the defendant has no legal basis to warrant a dismissal of the indictment.  (Docket #22,

pp. 14-22).


      It has been held that:

> [O]nly government conduct that "shocks the conscience" can
> violate due process. *United States v. Chin*, 934 F.2d 393,
> 398 (2d Cir. 1991) (quoting *Rochin v. California*, 342 U.S.
> 165, 172, 72 S. Ct. 205, 96 L.Ed. 183 (1952). . . .  The
> paradigm examples of conscience-shocking conduct are
> egregious invasion of individual rights.

*United States v. Rahman*, 189 F.3d 88, 131 (2d Cir. 1999).

However, the Court of Appeals for the Second Circuit has also held that:

> An indictment brought within the time constraints of the
> statute may nevertheless violate due process where pre-
> indictment delay has been shown to cause 'substantial
> prejudice' to the defendant's ability to present his defense
> and 'the delay was an intentional device to gain [a] tactical
> advantage over the accused.' [*United States v. Marion*, 404
> U.S. 307, 324, 92 S. Ct. 455 (1971)].  As the Supreme Court
> further has explained, where delay prejudices the
> presentation of a defense and is engaged in for an improper
> purpose it violates the Due Process Clause because such
> conduct departs from the fundamental notions of 'fair play.'
> *United States v. Lovasco*, 431 U.S. 783, 795, 97 S. Ct.
> 2044, 52 L.Ed.2d 752 (1977).  A defendant bears the 'heavy
> burden' of proving both that he suffered actual prejudice
> because of the alleged pre-indictment delay *and* that such
> delay was a course intentionally pursued by the government
> for an improper purpose.  *See United States v. Scarpa*, 913
> F.2d 993, 1014 (2d Cir. 1990); *United States v. Hoo*, 825
> F.2d 667, 671 (2d Cir. 1987).
>
> Prejudice in this context has meant that sort of deprivation
> that impairs a defendant's right to a fair trial.  *See United
> States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979).  This
> kind of prejudice is commonly demonstrated by the loss of
> documentary evidence or the unavailability of a key witness.
> *See e.g. Lovasco*, 431 U.S. at 796, 97 S. Ct. 2044. . . .

*United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999).

The Court of Appeals for the Second Circuit has clearly stated "that timely brought criminal prosecutions are only rarely dismissed." *Id.*  A defendant who claims that his Constitutional rights under the Fifth Amendment to the United States Constitution have been denied because of delay has

> [t]he burden of demonstrating **actual prejudice**. . . and the proof of prejudice must be **definite** and **not speculative.** To sustain [his] burden of proof, the defendant **must** "demonstrate how [the loss of evidence] is prejudicial" to [him].  Without definite proof as to this **essential** element no due process claim has been stated.

*United States v Birney*, 686 F.2d 102, 105-06 (2d Cir. 1982) (alteration of "the loss of evidence" in original) (citations omitted) (emphasis added).

The Second Circuit Court of Appeals has described the aforesaid burden on the defendant as a "heavy" one in order "to sustain a claim of violation of due process."  *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir.) *cert. denied* 444 U.S. 994 (1979).

The United States Supreme Court has expressly set forth the method of analysis that must be applied in determining whether a defendant has met his burden in establishing a claim of violation of due process based on delay.

> To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances in each case.

*United States v. Marion*, 404 U.S. 307, 324 (1971).

In a subsequent decision, the United States Supreme Court elaborated further on the issue wherein it stated:

> Thus Marion makes clear that proof of prejudice is generally a necessary but **not sufficient** element of a due process claim, and that the due process inquiry **must** consider the reasons for the delay as well as the prejudice to the accused.
>
> . . . [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment.
>
> . . . From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited.  And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or **some of the criminal acts**.  Thus no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so.

*United States v. Lovasco*, 431 U.S. 783, 790-92 (1977) (emphasis added).

As the United States Supreme Court admonished in *Lovasco*:

In our view, **investigative delay** is fundamentally unlike delay undertaken by the government solely "to gain tactical advantage over the accused," United States v. Marion, 404 U.S. at 324, 30 L.Ed.2d 468, 92 S.Ct. 455, precisely because investigative delay is not so one sided . . . We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, **even if his defense might have been somewhat prejudiced** by the lapse of time.

Id. at 795-96 (emphasis added).

In applying the principles established in *Lovasco*, the Court of Appeals for

the Second Circuit has stated:

As a general matter, a prosecutor is "justified in not seeking the indictment until . . . convinced that there [will] be sufficient evidence to prove guilt beyond a reasonable doubt." *United States v. Rubin*, 609 F.2d 51, 66 (2d Cir. 1979), *aff'd*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). Moreover, "[t]o establish denial of due process based on excessive pre-indictment delay [a defendant] bears the heavy burden . . . of showing not only that he was prejudiced by the delay but that **it was so unfair as to violate fundamental concepts of fair play and decency, such as would occur if the prosecutor deliberately used the delay to achieve a substantial tactical advantage.**" *Id.* (citing *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)); *see also United States v. Ruggiero*, 726 F.2d 913, 925 (2d Cir.) (defendant "failed to show either actual prejudice or unjustifiable governmental conduct, such as deliberate delay to achieve a substantial tactical advantage"), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 88 L.Ed.2d 60 (1984).

*United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990) (emphasis added).

In the instant case, the defendant has not presented any evidence to establish a claim that fundamental concepts of fair play and decency have been violated.  Nor has he presented anything to support a claim that the actions of the prosecutors in this case were based on a motive to obtain or achieve some form of tactical advantage by deliberately delaying the investigation and returning of the indictments.

Basically, the defendant is relying on the "**possibility** of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost."  However, in rejecting the "possibility of prejudice" under such circumstances, the Court of Appeals for the Second Circuit has expressly stated:

> We must also reject the contention that during the interim period witnesses' memories dimmed; that has not been considered the sort of actual substantial prejudice that predicates reversal for pre-indictment delay.

*Elsbery*, 602 F.2d at 1059.

In addressing a similar pre-trial claim of "actual prejudice," *i.e.*, "that memories will dim, witnesses become inaccessible and evidence lost," the United States Supreme Court has ruled as follows:

> As we said in United States v. Ewell [383 U.S. 116, 122 (1966)] "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges."

* * *

> Appellees rely solely on the real possibility of prejudice
> inherent in any extended delay: that memories will dim,
> witnesses become inaccessible and evidence lost.  In light of
> applicable statute of limitations, however, these
> **possibilities** are **not** in themselves enough to demonstrate
> that appellees cannot receive a fair trial and to therefore
> justify the dismissal of the indictment.  Events of the trial
> may demonstrate actual prejudice, **but at the present time**
> appellees' due process claims are **speculative** and
> **premature**.

*Marion*, 404 U.S. at 322, 325-26 (1971) (emphasis added).

At this stage of the proceedings, the defendant has merely claimed prejudice due to delay but has failed to "demonstrate how [the loss of evidence] is prejudicial" to him. "Without **definite** proof as to this essential element no due process claim has been stated."  *United States v. Birney,* 686 F.2d at 106 (emphasis added).

I do not find anything in the present record that would support a finding that the delay in indicting the defendant herein was caused so as to "gain a tactical advantage over the accused" or that such delay has caused the "loss of documentary evidence or the unavailability of a key witness."  As a result, it cannot be said that the defendant's rights under the Due Process Clause of the Fifth Amendment have been violated under those circumstances.  Therefore, it is RECOMMENDED that defendant's motion to dismiss the indictment on this basis be DENIED.

-14-

5.     **Defendant's "Motion For The Court To Review All
        Grand Jury Transcripts To Determine If The Superseding
        Indictment Was Issued By An Independent And
        Unbiased Grand Jury:"**

The defendant argues that the Superseding Indictment (Docket #25) was returned "17.5 months after the return of the Indictment by the May 2004 grand jury, and two days before that grand jury was set to expire," (Docket #29, p. 8, ¶ XVIII).  He speculates "that it is possible that the grand jury that returned the Superseding Indictment was not independent and unbiased, and that it is possible that it may have been led to issue the Superseding Indictment by way of improper instructions or information relating to, at a minimum, why Count I had to be changed."  (Docket #29, p. 8, ¶ XVIII).  As a result, he requests that the Court (a) "inspect all of the grand jury minutes/transcripts relating to the return of the Indictment and Superseding Indictment; (b) disclose those minutes/transcripts to the defendant; and (c) if the grand jury was not independent and unbiased in returning the Superseding Indictment," said indictment be dismissed.  (Docket #29, p. 8, ¶ XVIII).  In support of this application, the defendant cites the case of *United States v. Leeper*, 06-CR-58A decided by Chief Judge Arcara of this District.  For the reasons that follow, this reliance by the defendant on *Leeper* is misplaced.

*Leeper* involved two different grand juries.  The first grand jury empanelled on May 7, 2004 ("the May 2004 grand jury") returned a one-count indictment against the defendant Leeper charging him with bank robbery in violation of 18 U.S.C. § 2113(a).  On May 5, 2006, a superseding indictment was returned by the

May 2004 grand jury which had been extended for an additional six month period.  This grand jury expired on May 7, 2006.  The purpose of the superseding indictment was to correct a mistake in the original indictment.  On May 15, 2006, the parties appeared for trial and a jury was selected but not sworn.  After the jury was excused for the day, Chief Judge Arcara, *sua sponte*, "brought to the parties' attention the case of *United States v. Olsen*, 262 F.3d 795 (8th Cir. 2001) and requested briefing on the issue." (*United States v. Leeper,* 06-CR-58A, Docket #34, p. 2).  On May 16, 2006, the government obtained a second superseding indictment from a new grand jury that had been empanelled on November 4, 2005.  "Given the expediency with which a new grand jury had been assembled, presented with evidence and returned the indictment, the Court had reservations as to whether it was just 'rubber stamping' a change to the indictment issued by a prior grand jury" and therefore, the Court, *sua sponte*, "asked to see the transcripts of the May 16, 2006 grand jury proceeding, as well as the transcripts of the earlier grand jury proceedings."  (*Leeper,* Docket #34, pp. 3-4).

In the case at bar, the same grand jury that returned the original indictment (Docket #1) returned the superseding indictment (Docket #25).  There is nothing in the record before this Court to indicate a situation similar to that which existed in *Leeper.*

In fact, the defendant merely speculates that a *possibility* may exist that the grand jury that returned the superseding indictment (Docket #25) was "not

independent and unbiased" and that it may have returned said superseding indictment because of "improper instructions or information."  (Docket #29, p. 8, ¶ XVIII).  "A review of grand jury minutes is rarely permitted without factual allegations of government misconduct."  *United States v. Torres*, 901 F/2d 205, 233 (2d Cir. 1990).  The defendant "has the burden of showing that the government's use of the grand jury was improper." *United States v. Salameh*, 152 F.3d 88, 109-110 (2d Cir. 1998); *see also United States v. Leung*, 40 F.3d 577 (2d Cir. 1994).  As the United States Supreme Court has stated:

> We begin by reiterating that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority.  See United States v Mechanik, 475 US 66, 75, 89 L Ed 2d 50, 106 S Ct 938 (1986) (O'Connor, J., concurring in judgment) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process").  See also Hamling v. United States, 418 US 87, 139, n 23, 41 L Ed 2d 590, 94 S Ct 2887 (1974); United States v Johnson, supra, at 512-513, 87 L Ed 1546, 63 S Ct 1233.

*United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300-301 (1991).

The defendant has failed to overcome the presumption of regularity applicable to grand jury proceedings and therefore, it is RECOMMENDED that his motion seeking a review of the grand jury proceedings in this case be DENIED.

**6.     Defendant's Motion To Dismiss Count Four:**

The defendant claims that Count Four of the Superseding Indictment "does not allege a crime and therefore must be dismissed" because it "cannot be a

crime to pay a bank money that it is owed" as alleged in Count Four."  (Docket #29,

p. 10, ¶ XIX).


      Count Four of the Superseding Indictment reads as follows:


    1.  The allegations of paragraphs 1 through 11 of COUNT
ONE of this indictment are incorporated by reference as if
fully repeated here.

    2.  Included among loans for which defendant Culligan
caused installment payments to be made to lending banks
after the vehicles securing the loans had been traded in to
his used car dealership was an M&T Bank loan that was
secured by a 1994 Chevrolet Corsica (VIN No.
1G1LD55MXRY237404).

    3.  During a period in 1999 and 2000, to attempt to execute
and to execute the scheme and artifice to defraud,
defendant CULLIGAN caused installment payments to be
made to M&T Bank on account of the loan secured by the
aforesaid 1994 Chevrolet Corsica, intending to keep M&T
Bank from learning that its borrower had traded in that
vehicle, and that the borrower no longer possessed the
vehicle.

    All in violation of Title 18, United States Code, Section
1344(1) and Section 2.


      Paragraphs 4, 7, 8, 9 and 10 of Count One of the Superseding Indictment

are incorporated by reference in Count Four of said indictment.  These incorporated

paragraphs, *i.e.*, the factual allegations contained therein, are assumed to be true when

considering the defendant's motion to dismiss Count Four.  *United States v. Mango*,

199 F.3d 85, 89 (2d Cir. 1999).  Paragraph 4 describes "property rights" belonging to

the banks in question, *i.e.*, liens on vehicles pledged as security for loans made by the

banks.  Paragraph 7 describes how the defendant deprived the banks of property that

they were entitled to immediately have.  Paragraph 9 describes additional fraudulent

acts by the defendant which further resulted in a deprivation of property belonging to

the banks.  Paragraph 10 describes the means which the defendant utilized to prevent

the banks from discovering his acts that deprived them of their property rights.  The

cumulative effect of paragraphs 4 through 10 creates a picture of deceit by the plaintiff

resulting in detriment to the bank as alleged in Count Four of the Superseding

Indictment.

> As the Court of Appeals for the Second Circuit has held:

> It has been observed that "[t]he term 'scheme to defraud' . . . is not capable of precise definition."  *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987).  Wrestling with the term "to defraud," as it appears in the mail fraud statute, the Supreme Court stated that the words "commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *McNally v. United States*, 483 U.S. 350, 358, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed.968 (1924)).  Essential to a conviction under the "scheme to defraud" clause of the mail fraud statute is a showing of fraudulent intent: i.e., intent to deceive and intent to cause actual harm.  *See United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987).  Interpreting the "scheme to defraud" clause of the bank fraud statute, the Third Circuit, in *Goldblatt*, emphasized that "[t]he bank fraud statute condemns schemes designed to deceive in order to obtain something of value."  *Goldblatt*, 813 F.2d at 624.

> This much is clear: a conviction under the "scheme to defraud" clause of the bank fraud statute requires that the defendant engage in or attempt to engage in a pattern or

> course of conduct designed to deceive a federally chartered
> or insured financial institution into releasing property, with
> the intent to victimize the institution by exposing it to actual
> or potential loss.  *See id.*  It is worth emphasizing that the
> bank need not actually be victimized; the statute makes an
> individual criminally culpable for devising and executing or
> *attempting* to execute such a scheme with the intent to
> victimize the bank.  *See United States v. Kelley*, 929 F.2d
> 582, 585 (10th Cir.) ("ultimate success or failure of the
> scheme is immaterial" to conviction for bank or mail fraud),
> *cert. denied*, ____ U.S. ____, 112 S.Ct. 341, 116 L.Ed.2d
> 280 (1991); *United States v. King*, 860 F.2d 54, 55 (2d Cir.
> 1988) (per curiam) ("ultimate success" of scheme not
> necessary element of crime of mail fraud), *cert. denied*, 490
> U.S. 1065, 109 S.Ct. 2062, 104 L.Ed.2d 628 (1989).

*United States v. Stavrovlakis*, 952 F.2d 686, 694 (2d Cir. 1992).


As a result, Count Four of the Superseding Indictment adequately charges a violation of Title 18, U.S.C. § 1344(1) and therefore it is RECOMMENDED that defendant's motion to dismiss this Count be DENIED.


**7.     Defendant's Motion To Dismiss Count Five:**

The defendant asserts that Count Five of the Superseding Indictment "must be dismissed because it attempts to attach criminal activity to . . . doing nothing, to taking no action, to inaction" by alleging that the defendant "did not pay off Sovereign Bank's loan secured by the aforesaid 1997 Oldsmobile Achieva."  (Docket #29, p. 11, ¶XX).

Count Five of the Superseding Indictment charges as follows:

1.   The allegations of paragraphs 1 through 11 of COUNT ONE of this Indictment are incorporated by reference as if fully repeated here.

2.   Among loans for which defendant Culligan and his used car dealership used money to which a lending bank was entitled upon the trade-in of a vehicle, without the lending bank's knowledge or authorization, was a Sovereign Bank loan for which a 1997 Oldsmobile Achieva (VIN No. 1G3NL52T5VM303633) was pledged as collateral.  That vehicle was traded-in to Mike Culligan Motors, Inc., on or about April 19, 1999, for a newer vehicle.

3.   Beginning on or about April 19, 1999, defendant Culligan and his used car dealership, to attempt to execute and to execute the scheme and artifice to defraud, did not pay off Sovereign Bank's loan secured by the aforesaid 1997 Oldsmobile Achieva.

All in violation of Title 18, United States Code, Section 1344(1) and Section 2.

Once again, paragraphs 4, 7, 8, 9 and 10 of Count One of the Superseding Indictment are incorporated by reference in Count Five of said indictment and the factual allegations set forth in those paragraphs are assumed to be true for purposes of deciding the defendant's motion to dismiss.  *United States v. Mango, supra*.  The factual allegations set forth in the incorporated paragraphs 4, 7, 8, 9 and 10 describe or provide the *actus reus* so as to validly charge a violation of Title 18 U.S.C. § 1344(1) as set forth in Count Five.  Therefore, defendant's argument is without legal merit and it is RECOMMENDED that his motion to dismiss this Count be DENIED.

### 8.    Defendant's Motion to Suppress "Documents Obtained By Local Police Acting Pursuant To A Civil Seizure Order:"

The defendant moves to suppress evidence consisting of books and records that were seized from his business location on June 23, 1998 by members of the Erie County Sheriff's Office ("ECSO") pursuant to an *ex parte* seizure order issued by a New York Supreme Court Justice in a pending civil case involving the defendant. (Docket #20, p. 16, ¶ V, A).  He argues that the New York Supreme Court Justice failed to "make any findings related to probable cause (or any findings at all) . . . [and] without any limitation whatsoever" upon which to base the seizure order.  (Docket #20, p. 16, ¶ V, A).

After the aforesaid seizure by the ECSO, the books and records were turned over to Marine Midland Bank, the party who had obtained the *ex parte* order authorizing such seizure.  Sometime thereafter, Marine Midland provided copies of these records to the government.

The defendant claims that "this was a search by government agents and, at least in the context of a federal criminal case, violates the dictates of the Fourth Amendment" and therefore, "all evidence obtained as a result (as well as all fruit of the poisonous tree) - which makes up almost the entire case, so far as we (sic) can tell - must be suppressed."  (Docket #20, p. 16, ¶ V, A).

Basically, the defendant is claiming that an "intrasovereign rule of
exclusion" should apply to the facts of this case merely because the initial seizure of the
books and records in question was made by members of the ECSO without legal
probable cause for making such seizure.  Such a broad application of the exclusionary
rule has been expressly rejected by the Second Circuit Court of Appeals in *Tirado v.
C.I.R.,* 689 F.2d 307 (2d Cir. 1982), *cert. denied* 460 U.S. 1014 (1983) wherein the
Court stated:

> Courts that have read *Janis* to imply an intrasovereign rule
> of exclusion point to language in the opinion emphasizing
> the fact that the seizure there was made by agents of one
> sovereign (police of a California city), while the proceeding
> was brought by an agency of a different sovereign (the IRS
> of the United States), 428 U.S. at 455-56, 460, 96 S.Ct. at
> 3032-33, 3036; these cases also note that the Court in *Janis*
> specifically observed that its decision not to apply the
> exclusionary rule in that case did not foreclose the question
> of the applicability of the rule in proceedings "involving an
> intrasovereign violation, "*id*. At 456 n. 31, 96 S.Ct. At 3033 n.
> 31.  *See, e.g.*, *Vander Linden v. United States, supra*, 502
> F.Supp. At 697; *Guzzetta v. Commissioner*, 78 T.C. 173
> (1982).  We see no reason to think that the Supreme Court
> intended to resolve the intrasovereignty issue, which it
> explicitly left open.  Nor do we think, after our consideration
> of the question, that the fact of intrasovereignty holds
> promise as a reliable predictor of deterrence.  The key issue,
> implicit in *Janis* as in other exclusionary rule decisions, is still
> what concerns the seizing officers had in mind.
> Intrasovereignty does not adequately reflect the complexity
> of such a prediction.  Thus, a test based on sovereignty
> would represent a prediction that officials of one sovereign
> are likely to be deterred from illegal seizures by the threat
> that the evidence will be excluded from any proceeding
> conducted by the same sovereign, but will be indifferent to
> the same threat aimed at the proceedings of a different

sovereign.  Such a prediction sweeps too broadly.

*Id*. at 313.

Even if it is assumed, *arguendo*, that the seizure of the books and records

by the ECSO violated the Fourth Amendment, such violation does not automatically

mandate application of the exclusionary rule.

> The fact that the evidence was seized in violation of the Fourth Amendment does not mean that it will be suppressed for every purpose in every proceeding.  The Supreme Court has restricted application of the exclusionary rule to those circumstances where its deterrent effect would most likely be "substantial and efficient," *United States v. Janis, supra*, 428 U.S. at 453, 96 S.Ct. at 3031, and has cautioned that any extension of the rule beyond its core application - - normally, barring use of illegally seized items as affirmative evidence in the trial of the matter for which the search was conducted - - must be justified by balancing the "additional marginal deterrence" of the extension against the cost to the public interest of further impairing the pursuit of the truth.  *United States v. Janis, supra* 428 U.S. at 453-54, 96 S.Ct. at 3031-32; *see Stone v. Powell, supra* 428 U.S. at 493-94, 96 S.Ct. at 3051-52; *United States v. Calandra, supra*, 414 U.S. at 351-52, 94 S.Ct. At 621-22.  As the Court has said in the slightly different context of the standing required to assert the exclusionary rule, "[U]nbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury."  *United States v. Payner*, 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980).
>
> Determining when the likelihood of substantial deterrence justifies excluding evidence requires some assessment of the motives of the officials who seized the challenged evidence.  This inquiry into the officers' motivation is the fundamental issue in translating the idea of deterrence into practical decisions, for deterrence means modifying individual behavior.  "In evaluating the need for a deterrent

sanction, one must first identify those who are to be deterred," *United States v. Janis, supra*, 428 U.S. at 448, 96 S.Ct. At 3029, those whose "conduct . . . is to be controlled," *ibid*.  If it is not likely to occur to potential wrongdoers as they seize the challenged evidence to care about its use for the particular purpose later in issue, then removing the possibility of that use is unlikely to deter them from unlawful conduct.  As we have recently said, "[T]he deterrent purpose of the exclusionary rule would not be significantly advanced by . . . suppress[ing] . . . illegally seized evidence in a [proceeding] in which the offending police officers could not possibly have had an interest at the time they conducted the illegal search."  *United States v. Rea*, 678 F.2d 382, 389 (2d Cir. 1982).  Thus, in order to decide whether application of the exclusionary sanction is likely to have a significant deterrent effect, the key question is whether the particular challenged use of the evidence is one that the seizing officials were likely to have had an interest in at the time - - whether it was within their predictable contemplation and, if so, whether it was likely to have motivated them.

*Id.* at 310-311.

The seizure of the books and records of the defendant's business was made by the ECSO pursuant to a civil court order issued by the judge in a civil proceeding between the defendant and Marine Midland Bank.  It was an "order of seizure" pursuant to § 7102(a) of the New York Civil Practice Law and Rules ("CPLR") which provides:

When the plaintiff delivers to a sheriff an order of seizure, the papers on which the order was granted, the undertaking and a summons and complaint bearing the index number and the date of filing with the clerk of the court, in the action to recover the chattel, he shall seize the chattel in accordance with the provisions of the order and without delay.

The "order of seizure" was obtained *ex parte* as allowed by § 7102(c)

7 and (d) 3 of the CPLR based on the representations made in the supporting affidavit

of the attorney for the bank.  (S*ee* Defendant's Exhibit A attached to Docket #20).  The

justice of the New York Supreme Court, Erie County, issued the "order of seizure"

pursuant to § 7102(d) 1 and 3 of the CPLR.  (S*ee* Defendant's Exhibit B attached to

Docket #20).

Upon delivery of the "order of seizure" along with the other required

documents by the attorney for the bank, the sheriff was mandated to undertake the

seizure of the books and records of the defendant's business and after doing so, deliver

such records to the bank.  (*See* Defendant's Exhibit B attached to Docket #20).  This

was done on or about June 23, 1998.  The seizure made by the ECSO was not

motivated by any interest in the books and records seized.  It can safely be said that the

deputies of the ESCO could not have had an interest in the books and records of the

defendant's business at the time they were seized pursuant to a **civil** order of seizure.

This is further established by the fact that the books and records seized by the ECSO

were not retained by that office, but rather, turned over to the bank in accordance with

the seizure order.  Sometime thereafter, copies of the defendant's business records

were turned over by the bank to the government for its use in the prosecution of this

case.

The defendant argues that Article 71 of the CPLR and the provisions contained therein, "*generally* violate both the Fourth and Fourteenth Amendments to the United States Constitution" and that "the search and seizure of volumes of business records *here* was undertaken without a judicial officer finding probable cause to believe that a crime had been committed and that evidence of the crime was at the place to be searched." (Docket #20, p. 23).

Once again, even if it were assumed, *arguendo,* that the provisions of § 7102 of the CPLR were unconstitutional, or that the order upon which the search and seizure was made was invalid, such premises do not automatically require suppression of the books and records seized as evidence in this case. When police officers obtain evidence by way of good faith reliance on a facially valid warrant, such evidence does not have to be suppressed even though the warrant in question is later found to lack probable cause. *United States v. Leon*, 468 U.S. 897, 920 (1984). Further, as the United States Supreme Court held in *Illinois v. Krull*, 480 U.S. 340 (1987):

> The approach used in *Leon* is equally applicable to the present case. The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written. To paraphrase the court's comment in *Leon*: "Penalizing the officer for the [legislature's] error, rather than his own,

-27-

cannot logically contribute to the deterrence of Fourth
Amendment violations."

*   *   *

We noted in *Leon* as an initial matter that the exclusionary
rule was aimed at deterring police misconduct.  468 U.S. at
916, 82 L.Ed.2d at 677, 104 S.Ct. 3405.  Thus, legislators,
like judicial officers, are not the focus of the rule."  (p. 350).

*   *   *

There is no evidence suggesting that Congress or state
legislatures have enacted a significant number of statutes
permitting warrantless administrative searches violative of
the Fourth Amendment . . . .  Thus, we are given no basis
for believing that legislators are inclined to subvert their
oaths and the Fourth Amendment and that "lawlessness
among these actors requires application of the extreme
sanction of exclusion."  *United States v. Leon*, 468 U.S. at
916, 82 L.Ed.2d 677, 104 S.Ct. 3405.

*Id*. at 349-351.

Even if the "order of seizure" were deemed to have been erroneously

issued, that would not require the application of the exclusionary rule to the books and

records seized pursuant to that order.

[T]he exclusionary rule is designed to deter police
misconduct rather than to punish the errors of judges and
magistrates.  Second, there exists no evidence suggesting
that judges and magistrates are inclined to ignore or subvert
the Fourth Amendment or that lawlessness among these
actors requires application of the extreme sanction of
exclusion.

*United States v. Leon, supra* at 916.

-28-

The defendant has not presented anything to establish that the sheriff's deputies were not "acting in objectively reasonable reliance" on the statute, *i.e.*, § 7102(a) and the court order issued pursuant to that statute.  Therefore, his claim that the use of the books and records seized should be suppressed is without merit since such suppression would "not result in appreciable deterrence."  *Arizona v. Evans*, 514 U.S. 1, 11 (1995); *United States v. Janis*, 428 U.S. 433, 454 (1976); *Stone v. Powell*, 428 U.S. 465 (1976); *United States v. Calandra*, 414 U.S. 338, 348 (1974).  As the Court of Appeals for the Second Circuit has stated:

> [T]he deterrence rationale of the exclusionary rule is not served by applying the rule to exclude evidence from a proceeding where the evidence was not seized with the participation or collusion of, or in contemplation of use by, agents responsible for the proceeding in which the evidence is presented.

*Tirado v. C.I.R., supra* at 308.

Lastly, it is pointed out that "the connection between [the alleged] lawless conduct of the [sheriff's deputies] and the discovery of the challenged evidence has become so attenuated as to dissipate the taint."  *Wong Sun v. United States*, 371 U.S. 471, 487, 491 (1963); *United States v. Ceccolini*, 435 U.S. 268, 273-274 (1978).

Therefore, for all of the aforesaid reasons, it is RECOMMENDED that defendant's motion to suppress the use of the books and records seized by the ECSO as evidence in the trial of this case be DENIED.

-29-

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that defendant's motions to dismiss the Superseding Indictment, dismiss Counts Four and Five, and to suppress evidence be DENIED in their entirety.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.

1988).

        The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

**S/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED:**    **Buffalo, New York**
             **April 19, 2007**